IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00625-FDW

| | |
|---|---|
| STACEY WYNN, | ) |
| ORLANDO HARSHAW, | ) |
| SEAN L. SMITH, | ) |
| BENJAMIN WHITE, | ) |
| TAVIEOLIS HUNT, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FRANK L. PERRY, | )   **ORDER** |
| DAVID MITCHELL, | ) |
| LAWRENCE PARSONS, | ) |
| RODNEY MAULDIN, | ) |
| JOHN HARRINGTON, | ) |
| JEFFREY WALL, | ) |
| ALLAN KENNEDY, | ) |
| RHONDA JACKSON, | ) |
| JONATHAN PEGUESE, | ) |
| FNU MCCOY, | ) |
| FNU LAWRENCE, | ) |
| FNU ANDREWS, | ) |
| JOHN DOE 1-7, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** is before the Court on consideration of the Defendants' Perry, Mitchell, Parsons, Mauldin, Harrington, Kennedy, Peguese, and Jackson ("Defendants") motion to sever the claims of the five Plaintiffs in this case such that cases proceed separately from this point forward for all purposes of this litigation. For the reasons that follow, Defendants' motion will be granted.

1

I. BACKGROUND

Plaintiffs, who are prisoners of the State of North Carolina, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 contending that, among other things, one or more of the Defendants failed to take necessary steps to protect them from violence from their fellow inmates while the Plaintiffs where housed at Lanesboro Correctional Institution ("Lanesboro").[1]

A. Plaintiff Wynn

Wynn alleges that on November 12, 2011, he was assaulted twice by inmate Sadat Sanchez in unprovoked attacks. Wynn contends that he advised Defendants Maudlin and Harrington that Sanchez was stealing items from the kitchen cooler and that this had created tension between the two inmates. Wynn ultimately suffered severe knife wounds in one of the attacks with what appeared to be a filet knife; Wynn was treated at Anson Community Hospital and required ongoing treatment upon release. Wynn also contends that Defendant Parsons, who was an administrator of Lanesboro at the time of the attacks, had personal knowledge of the attacks and failed to ensure Wynn's safety or that he received proper medical treatment. (Compl. at 10, 13-14).

B. Plaintiff Harshaw

Harshaw alleges that Defendants, Unit Manager Jeffrey Wall and Sergeant John Doe-1, gave preferential treatment to members of the United Blood Nation ("UBN") and routinely smuggled contraband into the prison to sell to certain inmates. Harshaw was transferred to Lanesboro in 2012, and he had a prison-issued radio in his possession that he later noticed was in the office of Sergeant John Doe-1; the radio was later observed in the possession of inmate

---

[1] Unless otherwise noted, the allegations in the complaint are accepted as true at this stage.

Joseph Sanderlin. Harshaw filed a grievance in which he complained that Wall and John Doe-1 were giving preferential treatment to members of the UBN, and Wall later shared this grievance with Sanderlin with the hope that Harshaw would suffer retaliation. On Sanderlin's orders, inmate Dorsey stabbed Harshaw in his ear with a shank and repeatedly kicked him in the head rendering him unconscious; Dorsey left Harshaw's cell only to return thirty minutes later to renew his attack. Harshaw required emergency treatment for his injuries. Among other claims, Harshaw contends that Wall and John Doe-1 failed to protect him from a likely assault.

    C.    Defendant Smith

While housed at Foothills CI, Smith completed a nine-month program in an attempt to disassociate himself from gang activity.[2] Upon his transfer to Lanesboro, Smith informed Defendant Kennedy that the completion of the program placed him at risk of retaliation from gang members and he asked to be transferred from Lanesboro, however Kennedy never facilitated the transfer.

On August 30, 2012, Smith was assaulted in the recreation yard with a weapon that resembled a razor by a person Smith believed may have been a member of the Bloods gang; Smith suffered a severe laceration to his neck and was treated at the prison and then transferred to Anson Community Hospital for further treatment. After returning to Lanesboro, Smith made multiple requests for transfer to no avail. Smith suffered a second attack, this time by Inmate Matthew Long while Defendant McCoy was escorting him to the shower. Smith alleges that Kennedy and McCoy failed to protect him from a possible assault.

---

[2] The program is called the "Security Threat Group Management Unit" and is offered only at Foothills CI.

D. Plaintiff Hunt

Hunt was twice assaulted while housed at Lanesboro, first on March 25, 2012, and then a few weeks later in April. The first assault involved inmate Marion Sherrod choking and stabbing him while Hunt was in the dayroom watching television. After the assault Sherrod exited the dayroom and was detained by Correctional Officer Defendant John Doe-6 and the weapon was confiscated.

Hunt returned to his cell and observed inmates Matthew Woods and Broadhurst enter the B-Pod; Defendant Officers John Doe-2 and John Doe-3 were supposed to secure the entrance to the pod, but they knowingly allowed unauthorized inmates, such as Woods and Broadhurst to enter B-Pod. Woods and Broadhurst approached Hunt in an apparent effort to attack him and he took refuge in a cell and closed the door. Woods signaled to Defendant Lawrence to open the door and he complied; Hunt then fled the cell and ran into the dayroom and Woods and Broadhurst gave chase. Woods and Broadhurst caught Hunt and kicked him and stabbed him several times with an icepick; Hunt was later treated in the Lanesboro medical facility.

On or about April 6, 2012, Hunt informed Defendant Peguese that he did not feel safe at Lanesboro, and on April 11 he informed Defendant Kennedy of these same concerns. Despite this information, Hunt was released back into regular population to E-Pod, which is ostensibly run by the UBN. On April 17, Hunt informed Defendant Wall that he did not feel safe in his current location because he feared attack by members of the UBN, but Wall simply informed him that he would have to stay in E-Pod for a while. That same day, Hunt suffered the second attack, this time the assault was carried out by inmates Donovan Wiggins and Michael Fuell. Hunt suffered multiple injuries including lacerations to his face and chest; Hunt was treated at

Lanesboro and later at Anson Community Hospital.

After returning to Lanesboro, Hunt met with Defendant Parsons, who was then an administrator of the prison, and asked for a transfer citing his fear that he would suffer another attack. Parsons said that he would work on a transfer, meanwhile Hunt was returned to regular population.

E. Plaintiff White

On April 2, 2012, White was housed in C-Pod and he contends that Defendant Wall was aware that there would be an attack that day and that he facilitated access to C-Pod for five inmates who planned the attack. Defendant Peguese met with Wall that day and was also aware there would be an attack and was in fact present when the attack occurred. The five inmates, who were housed in E-Pod, were ultimately allowed into C-Pod by Defendants Andrews and Jackson and White was soon attacked by the inmates; White suffered serious injuries that required treatment at Carolinas Medical Center in Monroe. In sum, Hunt alleges that the defendants were aware of the imminent attack and failed to protect him.

II. DISCUSSION

Rule 20 of the Federal Rules of Civil Procedure provides, in pertinent part, that plaintiffs may be joined in one action if they "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)(B).

The "transaction or occurrence" test in Rule 20 "is designed to permit all reasonably related claims for relief or against different parties to be tried in a single proceeding." Advamtel, LLC v.

5

AT&T Corp, F. Supp. 2d 507, 514 (E.D. Va. 2000) (citing Saval et al. v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983). Courts generally apply the transaction or occurrence test on a case-by-case basis. Saval, supra. The rule "should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Id. Rule 21 of the Federal Rules of Civil Procedure provides that the court may sever parties that are improperly joined; the decision of whether to exercise this authority is discretionary. See Grennell v. Western Southen Life Ins. Co., 298 F. Supp. 2d 390, 399 (S.D. W. Va. 2004).

In the present case, each of the Plaintiffs allege attacks that occurred on separate days and although some of the attacks were allegedly facilitated through deliberate actions or omissions by various defendants, there are no attacks where any of the plaintiffs are present with one another and only a couple of the attacks involve the same defendants. For this reason, the Court will grant the Defendants' motion to sever and Plaintiffs' cases will proceed individually against the defendants that are alleged to have had a direct role in the alleged violation of their civil rights.[3]

    A.    Plaintiff Wynn

Plaintiff Wynn's case will be severed and he may proceed against Defendants Parsons,

---

[3] Defendant Secretary Frank Perry will be dismissed from this action as the complaint, even when liberally construed, sets forth a claim of liability that appears entirely dependent on the doctrine of respondeat superior. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (plaintiff must show supervisor had actual or constructive knowledge of constitutional violations and failed to act to address the "offensive practices" and that there was a link between this inaction and the "constitutional injury suffered." In other words, absent this showing "[s]upervisory officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Defendant David Mitchell will be dismissed for the same reason.

Mauldin and Harrington.[4]

B. Plaintiff Harshaw

Harshaw's case will be severed and he may proceed against Defendant Wall. The only other defendant named in connection with Harshaw's injuries is Defendant John Doe-1. Harshaw may move for issuance of process against John Doe-1 in the event that he is identified during discovery and there are sufficient allegations against him.

C. Plaintiff Smith

Smith's case will be severed and he may proceed against Defendants Kennedy and McCoy.

D. Plaintiff Hunt

Hunt's case will be severed and he may proceed against Defendants Lawrence, Peguese, and Wall. Hunt may move for issuance of process against John Doe-2, John Doe-3, and John Doe 6 in the event that they are identified during discovery and there are sufficient allegations against these defendants.[5]

E. Plaintiff White

White's case will be severed, and he may proceed against Defendants Wall, Andrews and Jackson.[6]

---

[4] Wynn alleges that Darlene Spatcher is a defendant in the complaint but no summons was ever issued for her and she is not named in the caption of the complaint. (Compl. ¶¶ 36, 37).

[5] Hunt has failed to allege sufficient allegations to proceed against Defendant Parsons, who was an administrator at Lanesboro. Plaintiff again relies on respondeat superior to establish culpability. Hunt only approached Parsons after the second attack when he expressed fear of continued attack and requested a transfer, however there are no allegations that Hunt was attacked after meeting with Parsons. (Compl. ¶ 203).

[6] White alleges that Defendant Parsons never investigated the attack on him and this constitutes "an administrative pattern" which created a dangerous environment. (Compl. ¶ 224). This allegation is conclusory and does not, without more, support a claim for relief against Parsons as a supervisor. Because the allegations depend on a liability based on respondeat superior, Defendant Parsons will be dismissed as a defendant in Parsons case unless further

III.	CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff Wynn's case will be severed and he may proceed against Defendants Parsons, Mauldin and Harrington.

2. Plaintiff Harshaw's case will be severed and he may proceed against Defendant Wall. The only other defendant named in connection with Harshaw's injuries is Defendant John Doe-1. Harshaw may move for issuance of process against John Doe-1 in the event that he is identified during discovery and there are sufficient allegations against him.

3. Plaintiff Smith's case will be severed and he may proceed against Defendants Kennedy and McCoy.

4. Plaintiff Hunt's case will be severed and he may proceed against Defendants Lawrence, Peguese, and Wall. Hunt may move for issuance of process against John Doe-2, John Doe-3, and John Doe 6 in the event that they are identified during discovery and there are sufficient allegations against these defendants.

5. Plaintiff White's case will be severed, and he may proceed against Defendants Wall, Andrews and Jackson.

6. Defendants Frank L. Perry and David Mitchell are **DISMISSED** as parties to this civil action for failure to state claim.

7. Each Plaintiff is directed to file an amended complaint in this case within thirty (30) days from entry of this Order and include only the factual allegations and causes of action that he wishes to pursue against the proper defendants that are identified herein.

---

allegations can be made against him in the amended complaint.

8. The named Defendants shall have thirty (30) days from the filing of the amended complaint to file an answer or otherwise respond.

9. The Clerk is directed to open new case numbers for each of the amended complaints, except for Plaintiff Wynn who is lead plaintiff in this case and his number will remain the same. The Clerk shall incorporate the Docket in this case into the newly opened civil actions.

10. The Clerk is directed to waive any civil filing fees when the new cases are opened as each of the Plaintiffs have been granted the right to proceed without prepayment of fees or costs.

**SO ORDERED**.

Signed: March 10, 2016

Frank D. Whitney
Chief United States District Judge