UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-625-FDW

| STACEY WYNN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| FRANK L. PERRY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for New Trial, (Doc. No. 108), and Defendant Parsons' Post-Trial Motion, (Doc. No. 109).

I. BACKGROUND

Plaintiff Stacey Wynn and four other North Carolina inmates filed a Complaint pursuant to 42 U.S.C. § 1983 in which they alleged that they were the victims of violent attacks by other inmates at Lanesboro Correctional Institution. (Doc. No. 1). Among the Defendants named in the Complaint was Lanesboro C.I. Union Unit Manager Jeffrey Wall. (Doc. No. 1 at 12). The Complaint's only mention of Defendant Wall with regards to Plaintiff Wynn was that "Unit Manager Wall told Plaintiff Wynn that Inmate Sanchez had attacked him as part of an initiation for the MS-13 gang" after the alleged attack had occurred. (Doc. No. 1 at 15). Defendants filed a Motion to Sever to which Plaintiffs' counsel objected. (Doc. No. 32). The Court issued an Order severing the Plaintiffs' cases, allowing Plaintiff Wynn's case to proceed against Defendants Parsons, Mauldin and Harrington, and giving the Plaintiffs 30 days to file individual Amended Complaints "include[ing] only the factual allegations and causes of action that [they] wish[] to

1

pursue against the proper defendants that are identified herein." (Doc. No. 37 at 8).

Plaintiffs filed a Motion to Amend along with a proposed Amended Complaint, (Doc. No. 39), and a Motion to Reconsider the severance Order, (Doc. No. 38). In the Motion to Reconsider the severance Order, (Doc. No. 38), Plaintiffs argued that, "[s]ince the filing of the original complaint," Plaintiffs located materials revealing that Jeffrey Wall "stored and kept weapons to facilitate attacks on inmates," "acted in concert with inmate-gang members to create a violent living environment in Union Unit," and "allowed and even ordered some of the stabbings on Plaintiffs" which deliberately fostered gang violence on Union Unit. (Doc. No. 38-1 at 3). In the Proposed Amended Complaint, Plaintiffs alleged that Unit Manager Wall allowed and fostered gang violence and a "contraband economy" and that "all of the assaults involved contraband mental weapons… and similar dangerous weapons." (Doc. No. 39-1 at 2). The Court denied the Motion to Reconsider the severance Order but granted the Motion to Amend, and Plaintiffs were granted an extension of time to file individual Amended Complaints. (Doc. No. 47).

Plaintiff filed his Amended Complaint through counsel on March 10, 2017. (Doc. No. 48). Plaintiff named as Defendants Lawrence H. Parsons, Rodney Mauldin, and John Harrington in their individual and official capacities. (Doc. No. 48 at 1). Defendants Parsons, Mauldin, and Harrington filed Answers and the Court entered a Pretrial Order and Case Management Plan with a discovery cutoff date of October 27, 2017. (Doc. Nos. 55, 57). On October 11, 2017, Plaintiff Wynn filed an unopposed Second Motion to Amend Complaint seeking leave to add Jeffrey Wall as a Defendant. (Doc. No. 58). The Motion states that, "[t]o the extent there has been any scheduling of discovery in this matter, discovery will be suspended until such time as Defendants have answered the [second amended] complaint…." (Doc. No. 58). On October 12, 2017, the Court denied the Motion to Amend in a text-only Order stating:

> Plaintiff moves for leave to amend his Complaint and to suspend discovery. While district courts freely grant leave to amend when justice so requires, justice does not so require in this instance. This matter was filed in 2015, and Plaintiff has already amended his complaint. Discovery has been ongoing and is scheduled to close [on] October 27. Justice requires this case to move forward, rather than continuing in the pleading stage. Therefore, Plaintiff's motion is DENIED, and discovery will continue without suspension and close on October 27. The Court will then entertain dispositive motions as set forth in the Case Management Order.

The parties then jointly moved to extend the scheduling order deadlines which was granted in part and denied in part. (Doc. Nos. 59, 60). Summary judgment was granted in favor of Defendants on all of the claims except the Eighth Amendment deliberate indifference claim against Defendant Parsons. (Doc. No. 73). The case was scheduled for a jury trial in July 2018.

The parties filed pre-trial motions including Motions *in Limine* addressing evidence of Plaintiff's prior felony convictions. Plaintiff argued that, although evidence of prior convictions is generally admissible under Rule 609(a), it should be excluded under Rule 403 because the probative value is substantially outweighed by the danger of unfair prejudice in Plaintiff's case. (Doc. No. 88). Defendant Parsons sought to introduce evidence of Plaintiff's criminal convictions because his criminal history of first-degree murder, kidnapping, and robbery with a dangerous weapon demonstrates his willingness to flaunt the rules of society and bears directly on his credibility. (Doc. Nos. 90, 91). Defendant Parsons argued that the evidence is not unduly prejudicial because the jury would already know, due to the nature of the case, that Plaintiff is incarcerated. Thus, Defendant Parsons argued, informing the jury of the nature of his convictions is no more prejudicial than leaving the jury to speculate about what those offenses might be.

The Court orally granted in part and denied in part Defendant Parsons' Motion *in Limine*. It ruled that Plaintiff's life sentence was admissible with regards to his credibility because a perjury conviction would pose no disincentive for him to lie. The Court reserved ruling on whether the

nature of his convictions would be admitted and cautioned Plaintiff about opening the door regarding the issue.

Plaintiff testified on direct examination that he and inmate Sadat Sanchez both worked in the prison kitchen at Lanesboro C.I. Plaintiff, who was responsible for inventory, knew that Sanchez was stealing food from the kitchen but was hesitant to report Sanchez because he did not want to be labeled as a snitch. Being labeled as a snitch is dangerous because "people prey on the weak" and "they think they'll do whatever they want to. They think [they] have the right to do something to you." On the day of the incident, a staff member found eggs that Sanchez was surreptitiously cooking Plaintiff threw them away at staff's direction. Sanchez blamed Plaintiff for throwing away the eggs and, after their work day in the kitchen was over, Sanchez followed Plaintiff into Plaintiff's cell and closed the door. A fist fight broke out between Plaintiff and Sanchez. The fight was broken up by two Black and two Hispanic inmates who, according to Plaintiff, happened to be in the area and entered Plaintiff's cell. Officers responded to the cell but they left after Plaintiff and Sanchez said there was no problem. Plaintiff testified that he lied to the officers about having been in a fight with Sanchez because his name would have been "ruined" and, as a result, "people … think they're going to try you…." When Plaintiff came downstairs from his cell to the housing pod's dayroom later that evening, Sanchez stabbed Wynn's chest with a sharp object and threw a chair at him. The two then squared off, exchanged punches, and went to the ground. Plaintiff tearfully described the stabbing and his injuries at trial. A surveillance video of the dayroom incident was played for the jury.

At sidebar, the Court cautioned Plaintiff's counsel that Plaintiff was coming dangerously close to opening the door to his criminal convictions by weeping and talking about other inmates preying on the weak, which was belied by Plaintiff's history of violent crimes.

On cross-examination, Plaintiff denied that the fight with Sanchez in his cell was "shooting the one," that is, a pre-arranged fight that inmates use to settle conflicts that are attended by the combatants and their helpmates. Plaintiff claimed that he did not know Sanchez was coming to the cell to fight him and that it was coincidence that two Black inmates and two Hispanic inmates happened to be in the upstairs hallway outside Plaintiff's cell, where inmates are not allowed to loiter, and break up the fight. Plaintiff went on to testify that his only write-up in prison was for a library book and that the tousle with Sanchez was his first fight in prison. Defense counsel addressed Plaintiff's claim that he had never been in a prison fight before as follows:

> Q [by Mr. McInnes] Now, yesterday I believe in answer to one of my questions kind of at the end well, when I asked you whether you had ever been in a fight in prison before, you said no. This is the only fight you've been in prison?
>
> A [by Plaintiff Wynn] Yes, sir.
>
> Q … I believe you said you're not a fighter?
>
> A No, sir. Not by trade.
> …
> Q Not by trade?
>
> A Right…. Yes.

The Court found at a sidebar that Plaintiff opened the door to the nature of his criminal convictions by stating he is not a fighter "by trade" because that statement was deceptive, as he was incarcerated for violent acts. The Court instructed the jury that Plaintiff's prior convictions were only to be considered with regards to his credibility as a witness. Plaintiff then testified that he was serving his life sentence for two counts of murder, armed robbery, and two counts of kidnapping.

The jury entered a verdict in favor of Defendant Parsons. (Doc. No. 99).

5

Plaintiff argues that a new trial should be granted pursuant to Rule 59 of the Federal Rules of Civil Procedure because: (1) the Court should have granted his Second Motion to Amend to permit him to add Jeffrey Wall as a Defendant; and (2) evidence of Plaintiff's felony convictions should not have been admitted.[1]

## II. STANDARD OF REVIEW

A court may grant a new trial on some or all of the issues "for any reason which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). Acceptable reasons include: "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline v. Wal-Mart Stores, 144 F.3d 294, 301 (4th Cir. 1998) (quoting Atlas Food Sys. & Servs., Inc. v. Crain Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996)). When making this determination, the court may weigh the evidence and consider the credibility of witnesses. Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1433 (4th Cir. 1985). A district court's denial of a motion for new trial is reviewed for an abuse of discretion and will not be reversed except in the most exceptional circumstances. Minter v. Wells Fargo Bank, N.A., 762 F.3d 339, 346 (4th Cir. 2014).

## III. DISCUSSION

**(1)** **Motion to Amend**

Leave to amend a complaint should be "freely give[n] … when justice so requires." Fed. R. Civ. P. 15(a)(2). Delay alone is an insufficient reason for denying leave to amend a pleading under Rule 15; it must be accompanied by prejudice, bad faith, or futility. Edwards v. City of

---

[1] The Court will not separately analyze Defendant Parsons' Post-Trial Motion in the interest of judicial economy because a new trial is not warranted.

Goldsboro, 178 F.3d 231 (4th Cir. 1999). Rule 15 applies prior to the entry of a scheduling order. Nourison Rug Co. v. Parvizian, 535 F.3d 295, 299 (4th Cir. 2008). Once a scheduling order has been issued, however, the moving party must establish good cause and seek leave of the district court to amend the order. Fed. R. Civ. P. 16(b) ("A schedule shall not be modified except upon a showing of good cause and by leave of the district judge…."); see Nourison, 535 F.3d at 298 ("after the deadlines provided by a scheduling order have passed, the good cause standard [of Fed. R. Civ. P. 16] must be satisfied to justify leave to amend the pleadings."). "Good cause" requires "the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence," and "the good cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." Cook v. Howard, 484 Fed. Appx. 805, 814-15 (4th Cir. 2012) (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure Civ. 3d* § 1522.2 (3d Ed. 2010)).

Plaintiffs jointly filed a Complaint then the Court ordered the filing of Amended Complaints after the case was severed. (Doc. No. 37). Although the severance Order directed each Plaintiff to address his Amended Complaint to the Defendants and claims identified in that Order, Plaintiffs subsequently filed a Motion to Amend seeking to add claims about Defendant Wall, which was granted. (Doc. No. 47). Plaintiff Wynn then filed an individual Amended Complaint that did not name Wall as a defendant. (Doc. No. 48). Plaintiff's second Motion to Amend in which he sought to add Wall as a defendant would have required "suspen[sion]" of the Pretrial Order's discovery cutoff date. (Doc. No. 58). The Court had discretion to deny the Motion for Leave to Amend because Plaintiff has not satisfied Rule 16's "good cause" requirement by acting diligently. Plaintiff knew, by April 7, 2016, of Wall's alleged wrongdoings with regards to contraband

weapons, ordering attacks on Plaintiffs, and deliberately fostering gang violence. (Doc. No. 38). However, when Plaintiff filed his individual First Amended Complaint on March 10, 2017, he named only Lawrence H. Parsons, Rodney Maudlin, and John Harrington as Defendants. Plaintiff did not name Jeffrey Wall as a Defendant or make any allegations against him. (Doc. No. 48). Plaintiff Wynn waited until November 11, 2017 – just 16 days before the discovery cutoff date and more than a year-and-a-half after learning of Wall's alleged actions – before moving to amend and add Jeffrey Wall as a defendant. Plaintiff has failed to demonstrate diligence under these circumstances and, therefore, the Court did not err by denying the Motion seeking to file a second Amended Complaint and suspend discovery.[2]

The Order denying Plaintiff Wynn's second Motion to Amend under the foregoing circumstances does not warrant a new trial under Rule 59(a) because it did not result in a verdict that was against the clear weight of the evidence, that was based on false evidence, or that would result in a miscarriage of justice. Plaintiff's Motion for New Trial on this ground will therefore be denied.

**(2)** **Prior Convictions**

A district court is vested with broad discretionary power to admit or exclude evidence. United States v. Lighty, 616 F.3d 321, 351 (4th Cir. 2010). The district court commits a clear abuse

---

[2] Plaintiff suggests that the Court should have granted Plaintiff Wynn's Motion to Amend because it had granted similar motions in several severed cases. The Court disagrees. Plaintiffs Benjamin White and Tavieolis Hunt sought, and were granted, leave to amend before any answers or scheduling orders had been filed in their cases. See 3:17-cv-120, 3:17-cv-129. Because no pretrial scheduling order had been entered in Plaintiffs White's and Hunt's cases, Rule 15 governed and their motions to amend were liberally granted. Plaintiff Sean Smith filed a motion for leave to amend just 12 days after the pretrial order was entered in his case and more than three months before the discovery cutoff date. See 3:17-cv-119. Unlike Plaintiff Wynn, Plaintiff Smith filed his motion to amend well before the pretrial deadlines were scheduled to expire and his motion to amend was therefore granted. The most similar case to Plaintiff Wynn's is that of Plaintiff Orlando Harshaw, who filed a motion for leave to amend after the discovery cutoff and dispositive motion due dates had expired. Plaintiff Harshaw, like Plaintiff Wynn, failed to demonstrate good cause and diligence, and therefore, he was denied leave to amend in accordance with Rule 16. See 3:17-cv-118.

of discretion only when the court acts arbitrarily or irrationally. United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994). An evidentiary ruling can be affirmed on any ground supported by the record. United States v. Moore, 709 F.3d 287, 293 (4th Cir. 2013).

"Relevant evidence is admissible unless otherwise prohibited by the Constitution, the Rules of Evidence, statutes, or other rules prescribed by the Supreme Court." Fed. R. Ev. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable that it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Ev. 401(a), (b). Rule 403 prevents the admission of evidence only when its probative value is "substantially outweighed by its prejudicial impact 'in the sense that it tend[s] to subordinate reason to emotion in the factfinding process." United States v. Gray, 405 F.3d 227, 240 (4th Cir. 2005) (quoting United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997)). Prior convictions are admissible under Rules 402 and 403 to contradict specific testimony so long as the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice. United States v. Norton, 26 F.3d 240, 245 (1st Cir. 1994). It is well established that "a witness, whether a party or not, may not be asked questions as to irrelevant matters on cross-examination for the purpose of … discrediting him." United States v. Chase, 372 F.2d 453, 463 (4th Cir. 1967). However, when a witness makes a volunteered statement that misleads the jury, the door has been opened and testimony can then be elicited from the witness that will correct the false impression.[3] See generally

---

[3] For example:
[A]ssume the criminal defendant on direct or even cross-examination when asked about whether he shot X with a gun, answers by stating, "I never owned a gun, fired a gun, or even held a gun. I am a law abiding person." Here the prosecution did not possess an effective course of conduct to prevent the jury from hearing the defendant's volunteered statements. Here the doctrine of door opening does serve to prevent the introduction of misleading evidence and thus unfairness. The remedy of a motion to strike the inadmissible evidence of specific instance of conduct to establish character and an opinion as to character, even when accompanied by a jury instruction to disregard, is simply as a practical matter inadequate—thus the concept of door opening.

2 Handbook of Fed. Ev. § 103:4, note 21 (8th Ed.).

United States v. Brown, 921 F.2d 1304, 1307 (D.C. Cir. 1990).

Rule 609 governs the admissibility of a prior conviction for impeachment purposes. Evidence of a witness's felony conviction "must" be admitted in a civil case subject to Rule 403. Fed. R. Ev. 609(a)(1)(A). The Rule limits the use of a conviction more than 10 years old if more than 10 years have passed since the witness's conviction or release from confinement, whichever is later.[4] Fed. R. Ev. 609(b). This rule "is premised on the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." Henslee v. Singleton, 714 Fed. Appx. 271, 272 (4th Cir. 2018) (quoting Walden v. Georgia-Pacific Corp., 126 F.3d 506, 523 (3d Cir. 1997)). "[T]he gradations among Rule 609(a)(1) crimes, in terms of their bearing on truthfulness … lie at the heart of the Rule 403 analysis that district courts must undertake when determining whether to admit for impeachment purposes evidence of a witness's convictions, including their statutory names, under Rule 609(a)(1)." United States v. Estrada, 430 F.3d 606, 619 (2d Cir. 2005).

Plaintiff testified on direct examination that inmates who are perceived as weak or as "snitches" are victimized by other inmates. He admitted on direct examination that he did not want to report Sanchez for stealing food and that he lied to officers about fighting Sanchez in his cell because he did not want to be labeled as a snitch, and therefore, weak. He then tearfully described Sanchez's knife attack that occurred later that same evening. On cross-examination, Plaintiff denied that the incident with Sanchez in Plaintiff's cell was a pre-arranged fight. He went on to testify that he had no prior fights in prison and that his only disciplinary infraction in prison was for a library book. When defense counsel asked Plaintiff about his claim that this was his only

---

[4] The 10-year old conviction rule does not apply to Plaintiff because he is still incarcerated for the relevant offenses.

fight in prison, Plaintiff volunteered that he is not a fighter "by trade."

Plaintiff tearfully portrayed himself as a meek, rule-abiding, non-violent cook who avoided conflict and lied to officers to prevent his victimization by other dangerous inmates. It was appropriate under these circumstances for the defense ask Plaintiff about the offenses that led to his incarceration to dispel the false impression that Plaintiff is weak, non-violent, and subject to victimization in prison. See, e.g., Gee v. Pride, 992 F.2d 159 (8th Cir. 1993) (§ 1983 plaintiff's conviction for PCP possession was admissible to impeach his cross-examination testimony that he had never used PCP; the trial court did not abuse its discretion by overruling plaintiff's objection and admitting a certified record of his conviction under Rule 609(a)). The Court concluded under these circumstances that Plaintiff's prior convictions would not be unduly prejudicial and provided a limiting instruction that the jury consider this evidence only with regards to Plaintiff's credibility. See, e.g., Henslee, 714 Fed. Appx. at 272 (the probative value of admitting inmate plaintiff's criminal history in a § 1983 suit against a correctional officer alleging the use of excessive force was not outweighed by the potential for unfair prejudice, particularly in light of the court's limiting instruction that the convictions were to be considered only for the purpose of determining the plaintiff's credibility). Admitting Plaintiff's criminal convictions under these circumstances was within the Court's broad discretion and Plaintiff's Motion for New Trial on these grounds will be denied.

## IV.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for New Trial, (Doc. No. 108), is **DENIED**.

2. Defendant Parsons' Post-Trial Motion, (Doc. No. 109), is **DENIED** as moot.

3. The Clerk of Court is instructed to close this case.

Signed: September 28, 2018

*Frank D. Whitney*
Frank D. Whitney
Chief United States District Judge